UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TRANSAMERICA LIFE INSURANCE COMPANY

VERSUS

KAREN M. LECLERE INDIVIDUALLY
AND ON BEHALF OF THE MINOR,
BENJAMIN J. LECLERE, ET AL.

CIVIL ACTION

NO. 15-723-JJB-RLB

**RULING**

This matter is before the Court on two Motions. The first is a Motion for Summary Judgment (Doc. 23) brought by the Plaintiff, Lisa Glover ("Glover"). One of the Defendants, Karen M. Leclere ("Karen"), filed an Opposition (Doc. 25). Glover filed a Reply (Doc. 29). Additionally, the other Defendants, David A. Leclere, II ("David"), Michael J. Leclere ("Josh"), and Daniel D. Holliday, as trustee of the David A. Leclere II Testamentary Trust, The Michael J. Leclere Testamentary Trust, and The Benjamin J. Leclere Inter Vivos Trust ("The Trusts"), joined Glover's Motion for Summary Judgment and submitted their own memorandum (Doc. 26).

The second motion is a Motion for Attorney's Fees and Costs (Doc. 21) filed by the original Plaintiff-in-Interpleader, Transamerica Life Insurance Company ("Transamerica"). This Motion is unopposed.

The Court's jurisdiction exists pursuant to 28 U.S.C. § 1335. Oral argument is unnecessary. For the reasons stated herein, Glover's Motion for Summary Judgment (Doc. 23) is **GRANTED** and Transamerica's Motion for Attorney's Fees and Costs (Doc. 21) is **GRANTED**.

I. **BACKGROUND**

This case is about a dispute over the proceeds of David A. Leclere's ("the Decedent") life insurance policy. This is essentially a dispute between the Decedent's fiancée and his children, on the one hand, and his ex-wife, on the other hand.

1

Most of the facts giving rise to this case are not in dispute. In 1999, Transamerica issued a life insurance policy to the Decedent. In March 1999, the Decedent executed a beneficiary designation form which provided that the proceeds of the policy would be split between his wife and sons. In 2005, the decedent divorced his wife, Karen Leclere.

In January 2010, the Decedent executed a new beneficiary designation form which provided that the proceeds were to be divided between different trusts set up for his sons. Notably, Karen had been removed as a beneficiary. Transamerica received this form but sent the Decedent a letter informing him that the new designations could not be processed because additional information was needed. The Decedent took no further action regarding the proposed January 2010 beneficiary change.

In December 2014, the Decedent attempted to execute another beneficiary designation change. The form provided that the proceeds were to be distributed as follows: 30% to Lisa Glover (who was listed as the Decedent's fiancée on the form), 40% to the Benjamin Leclere Testamentary Trust, 15% to David A. Leclere II, and 15% to Michael Joshua Leclere. Notably, the change form submitted by the Decedent contained the following language: "A confirmation of the change will be mailed to the owner's address of record, unless one of the below options is selected. If there is more than one owner, please designate one email address or fax number. **By selecting the email or fax option below, I understand that confirmation will <u>not</u> be sent in paper form**."[1] The Decedent then provided his contact e-mail address and initialed the language on the form providing that: "I would like confirmation of this change, or any questions related to the requested change, securely mailed to me at the email address provided below."[2]

---

[1] Beneficiary Change Form, signed 12/1/14, Doc. 23-7 (emphasis in original).
[2] *Id.*

A few days after the Decedent sent this form, Transamerica wrote a letter to the Decedent confirming receipt of the beneficiary change form and noting that it could not process the request because the Decedent made two small errors on the form. He failed to initial a correction he made on the form to his son's birthdate, and he used the wrong name for the Trusts (he called them "Testamentary Trusts" whereas they are required to be called "Trusts Under Will").

The Decedent died in July 2015. This letter was never opened by the Decedent during his lifetime. The letter was sent to his office during a time when the Decedent was allegedly relocating.[3] Becky McDaniel (a paralegal at the Decedent's office) noted that she found the unopened letter after the Decedent died.

Transamerica filed the instant interpleader action as a disinterested stakeholder noting that there were conflicting claims among the Defendants. Lisa Glover, the Decedent's fiancée, now moves for summary judgment arguing that the Court should find the December 2014 change of beneficiary form valid and enforceable. She argues that the Decedent "substantially complied" with the procedures for changing the beneficiary form. Karen Leclere, the Decedent's ex-wife, opposes the Motion. She spends the majority of her brief attacking the admissibility of Glover's evidence, and only a single page addressing the merits of Glover's Motion.

## II. EVIDENTIARY DISPUTES

Karen Leclere argues that Glover's Exhibits 1, 3, 4, 5, 6, 7, 10, and 10A are not competent summary judgment evidence because they were not authenticated. This Court disagrees for two overarching reasons. First, the majority of these exhibits are properly before the Court because Karen Leclere, in her Answer, accepted these documents.[4] Second, as to the other documents that

---

[3] The Decedent was a lawyer.
[4] Answer ¶ 9, Doc. 10 ("Ms. LeClere admits the allegations of paragraphs XII through XVI of the Complaint, and states that the Exhibits identified are the best evidence of their contents.").

were first presented to this Court in Glover's Motion, those documents are competent summary judgment evidence.

The general rule is that a party is bound by the admissions in her pleadings.[5] "Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them. A fact admitted by answer is no longer a fact in issue."[6] A court may exercise its discretion to excuse a party from the consequences of its judicial admission in an appropriate case.[7] However, excusing a party from its admission should be rare: "In a real and legitimate controversy, a party should be left within the knot of his averments in pleadings and admissions in testimony, unless the Court can find an absolute demonstration from the evidence in the case, or from facts within judicial notice, like the laws of physics…that under no circumstances could the averments and admissions be true."[8]

Here, the Court finds that excusing Karen Leclere from her unequivocal admissions would be an abuse of discretion. In her Answer, Karen Leclere admitted "to the allegations of paragraphs XII through XVI of the Complaint, and state[d] that the Exhibits identified [in those paragraphs] are the best evidence of their contents."[9] In paragraph XII of its Complaint, Transamerica described a beneficiary designation form from March 1999 and attached the form. Glover attached this form as Exhibit 1 to her Summary Judgment Motion.[10] In paragraph XIII, Transamerica described the January 2010 beneficiary designation form and attached this form. Glover attached this form as

---

[5] *Davis v. A.G. Edwards and Sons*, 823 F.2d 105, 108 (5th Cir. 1987).
[6] *Hill v. FTC*, 124 F.2d 104, 106 (5th Cir. 1941); *see also United States v. Lawrence*, 276 F.3d 193, 196 (5th Cir. 2001) ("Lawrence contends that the copies of the promissory notes and assignments were not competent summary judgment evidence because they were not properly authenticated as required by FED.R.CIV.P. 56(e) and FED.R.EVID. 902(11). The point is moot. In his affidavit and answer, Lawrence concedes that he applied for and was granted the loans and that he signed the notes.").
[7] *MacDonald v. General Motors Co.*, 110 F.3d 337, 340 (6th Cir. 1997) (citing *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975)).
[8] *Larson v. Wrigley*, 253 F. 914, 917 (7th Cir. 1918).
[9] Answer ¶ 9, Doc. 10.
[10] Doc. 23-3.

Exhibit 3 to her Summary Judgment Motion.[11] In paragraph XIV, Transamerica described a January 2010 letter from Transamerica to the Decedent rejecting the beneficiary change. Transamerica attached this letter to the Complaint. Glover attached it to her Summary Judgment Motion as Exhibit 4.[12] In paragraph XV, Transamerica described the December 2014 beneficiary designation change form and attached a copy. Glover attached this document to her Motion as Exhibit 5.[13] In paragraph XVI, Transamerica described the rejection letter it sent to the Decedent regarding the change form. It attached this letter. Glover attached this letter to her Motion as Exhibit 6.[14] Additionally, in her Answer, she admitted that the policy attached to the Complaint, was the "best evidence of its contents."[15] Glover attached an excerpt of this policy to her Motion as Exhibit 7.[16]

The Court finds Karen Leclere's argument, that these exhibits are not competent summary judgment evidence, overwhelmingly meritless. In her own Answer, Ms. Leclere accepted the allegations in the Complaint regarding the basic facts alleged in Glover's Motion. Additionally, she accepted Exhibits 1, 3, 4, 5, 6, and 7, as their own best evidence of the allegations presented in paragraphs XII through XVI. The Court finds no reason to excuse Ms. Leclere from these admissions given that Ms. Leclere has presented no evidence which casts doubt on the validity of these documents. Accordingly, these documents are properly before the Court.

Ms. Leclere also argues that Exhibits 8 and 9 should not be considered by this Court because they are affidavits that contain sworn statements that were not made based on personal knowledge. Exhibit 8 is an affidavit by the Decedent's paralegal, and Exhibit 9 is an affidavit by

---

[11] Doc. 23-5.
[12] Doc. 23-6.
[13] Doc. 23-7.
[14] Doc. 23-8.
[15] Answer ¶ 6, Doc. 10.
[16] Doc. 23-9.

an employee of Transamerica. The Court finds that both of these affidavits comply with Rule 56(c) of the Federal Rules of Civil Procedure. To the extent that there are any "personal knowledge" problems with these affidavits, the Court has disregarded any statements in the affidavits that could not have been made on personal knowledge.

Accordingly, Exhibits 1, 3, 4, 5, 6, 7, 8 and 9 are properly before this Court. The Court does not address Exhibits 10 or 10A as they are not material to a resolution of this matter.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. STANDARD

Summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[17] An issue is material if its resolution could affect the outcome of the action.[18] A dispute is considered genuine if a reasonable jury could return a verdict for the nonmoving party.[19]

A party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.[20] If the moving party satisfies its burden, the nonmoving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case.[21] A court must resolve all reasonable factual inferences in favor of the nonmoving party.[22] However, the nonmoving party's burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated

---

[17] Fed. R. Civ. P. 56(a).
[18] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (citation omitted).
[19] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).
[20] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003) (internal quotation marks and citations omitted).
[21] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (internal quotation marks and citations omitted).
[22] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

assertions, or by only a scintilla of evidence.[23] Additionally, when the only remaining conflict between the parties concerns the legal consequences flowing from undisputed facts, summary judgment is clearly appropriate.[24]

### B. LAW & ANALYSIS

The Court finds that the material facts are undisputed, and therefore, it is proper to resolve the case at this stage. The only real conflict between the parties concerns the legal consequences that flow from the undisputed facts. Here, the conflict is over whether the Decedent "substantially complied" with the procedure for changing his beneficiary designations such that the 2014 beneficiary form should be given legal effect.

Karen Leclere argues that there is a genuine dispute as to whether it was the Decedent who sent the 2014 beneficiary designation change form, and this dispute precludes summary judgment: "Glover argues that it is 'not in dispute' that [the Decedent] filled out a beneficiary change form on December 1, 2014, then signed the form and submitted it to Transamerica, but there is a genuine dispute as to this material fact. Glover merely attaches an unsworn and unauthenticated copy of the alleged form, and even if it were attached to an affidavit of [the Transamerica employee], [she] lacks personal knowledge as to whether [the Decedent] signed the form."[25] The Court finds this attempt to create a fact issue unavailing for two reasons. First, Karen Leclere already admitted that it was the Decedent who sent the December 2014 form.[26] Second, even assuming that she hadn't

---

[23] *Willis v. Roche Biomedical Labs, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (internal quotations and citations omitted).
[24] *Odom v. Tripp*, 575 F. Supp. 1491, 1493 (E.D. Mo. 1983); *Fitzsimmons v. Greater St. Louis Enterprises*, 63 F.R.D. 620, 622 (S.D. Ill. 1974); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2725 (4th ed.).
[25] Karen Leclere's Opp. 7-8, Doc. 25.
[26] In ¶ XV of the Complaint, Transamerica alleged that the Decedent was the individual who sent the company the December 2014 beneficiary change form: "On December 5, 2014, Transamerica received a Beneficiary Change Form from LeClere attempting to change the beneficiary designation as follows: '30% Lisa Glover, 40% Benjamin LeClere Testamentary Trust, 15% David A. LeClere II, 15% Michael Joshua LeClere.' A true copy of the Beneficiary Change Form, dated December 1, 2014, is attached…" Complaint, Doc. 1. Ms. Karen Leclere admitted

7

admitted that fact, this attempt at calling into question his signature is the type of unsubstantiated assertion that does not satisfy a nonmovant's burden.

Both parties agree that this dispute is governed by Louisiana law. Generally, Louisiana law requires strict compliance with an insurance contract's terms to effect a change of beneficiary.[27] However, Louisiana recognizes the doctrine of substantial compliance in limited circumstances.[28] "[W]hen an insured does substantially all that lay within his power to effect a change of beneficiary," a change of beneficiary will be effected even though the beneficiary was not technically changed before the insured's death.[29] Substantial compliance applies when an insured complies with the requirements on the face of the policy, but some internal procedure is not completed.[30]

Where an insured fills out a formal document provided by the insurer which manifests his intent to change a beneficiary, and this form complies with the procedures set out on the face of the policy, the change of beneficiary will be given effect even if the insured has not complied with every internal procedure of the insurance company.[31] In *Philadelphia Life Ins. v. Whitman*, a Louisiana appellate court was tasked with determining which individual was entitled to the proceeds of a life insurance policy.[32] The decedent had originally named his daughter as the sole beneficiary.[33] A few years later, the decedent began dating a woman and started living with her.[34] After living with this woman for a few years, he received a form letter from his life insurance

---

the truth of this paragraph in her Answer at ¶ 9. Accordingly, it is uncontested that the Decedent signed and submitted this form to Transamerica.
[27] *Sun Life Assur. Co. of Canada v. Richardson*, 299 F.3d 500, 503 (5th Cir. 2002) (applying Louisiana law).
[28] *Id.*
[29] *Id.* (citation and internal quotations omitted).
[30] *Id.*
[31] *See Philadelphia Life Ins. v. Whitman*, 484 So.2d 266, 268 (La. App. 3d Cir. 1986).
[32] *Id.*
[33] *Id.* at 267.
[34] *Id.*

8

company.[35] The form asked him to answer various questions including whether he wanted to change his beneficiary designation.[36] With the help of a family member, the decedent filled it out and named his girlfriend as the beneficiary.[37] The decedent sent the form to his insurance company, and "pursuant to its internal procedures," the insurance company forwarded the decedent a change of beneficiary card for him to complete and sign.[38] The card was never executed because it was not received until after the decedent died.[39]

The trial court granted summary judgment in favor of his daughter, finding that the form questionnaire that the decedent filled out was an application to change the beneficiary but not a formal document that could change the beneficiary.[40] The appellate court reversed and granted summary judgment for the girlfriend, finding that the questionnaire had the effect of making her the beneficiary: "[I]t is settled that substantial compliance by an insured with policy provisions for a change of beneficiary will be given effect where the intention of the insured to make a change is manifest and the change of beneficiary is not contrary to law and does not affect vested rights. It is equally well settled that the internal procedures established by the insurer in connection with applications for a change of beneficiary are mainly for the benefit of the insurer and do not operate to provide an exclusive method for a change of beneficiary."[41] The court held that because the policy did not require a particular form for a change of beneficiary other than that the insured give

---

[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at 268.
[41] *Id.* (citations omitted); *See also Metropolitan Life Ins. Co v. Johnson*, 297 F.3d 558, 568 (7th Cir. 2002) ("[W]e conclude that [the decedent] clearly evidenced an intent to change his beneficiary designation, that he took positive action to effectuate that intent, and that checking the wrong box does not serve to negate that intent. It is true that [the decedent] made some errors, but the doctrine of substantial compliance by its very nature contemplates something less than actual compliance.").

9

written notice to the company of his desire to change the beneficiary, the questionnaire response had the effect of changing the beneficiary.

Where the decedent does not complete all of the steps to effect a beneficiary change, but he is not made aware that he needs to take more steps to effect the change because of a failure of the insurance company and/or its agent, the change will be deemed effective as long as the insurance company had notice of his attempted change.[42] In *Kibling*, the decedent had originally named his wife as beneficiary.[43] After some marital troubles, he decided to change his father to beneficiary.[44] His insurance company provided him a form which he filled out and returned, naming his father as beneficiary.[45] In order for the change to be effective, the insurance company needed him to fill out another form; however, the agent could not get in contact with the decedent by telephone to have him execute the new form.[46] The agent did not send a letter or any instructions to the insured.[47] Ultimately, the court granted summary judgment in favor of the father finding that the decedent "clearly evidenced his intent to change the beneficiary" from his wife to his father, and "that he did, as a matter of law, all that was within his power to do to make that change."[48]

Even construing the facts in the light most favorable to the nonmovant, the Court finds that the Decedent substantially complied with the procedures such that the December 2014 beneficiary designation shall be given effect. The Court assumes, for the purposes of ruling on this Motion, that the Decedent *received* the letter from Transamerica which noted that his December 2014 beneficiary change was not effective because of some minor errors, but that he did not *open* it because he was busy with the office move. The Court also assumes that the Decedent was aware

---

[42] *See The Prudential Insurance Co of America v. Kibling*, 352 F. Supp. 1274, 1277 (M.D. La. 1973).
[43] *Id.* at 1275.
[44] *Id.* at 1276.
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.* at 1277-78.

that these types of minor errors could inhibit him from changing the beneficiary because he had tried to change the beneficiaries in December 2010 but he was unsuccessful because of similar minor errors. Even viewing the facts in this way, the Court finds, that as a matter of law, the Decedent did all that lay within his power to effect the change, and, therefore, the proceeds shall be distributed according to the December 2014 designation form.

Like the decedent in *Whitman* whose change of beneficiary was effective where he filled out a form that complied with the face of the policy even though it did not comply with the internal procedures of the policy, the Decedent here filled out a form that complied with the face of the Transamerica policy even though it had some technical problems. The Transamerica policy stated: "You may change the designated Beneficiary while the insured is living by sending a satisfactory written notice to us. The change will not be effective until we record it at our administrative office."[49] It is undisputed that by filling out the beneficiary designation form on December 1, 2014, he clearly evidenced his intent to change the beneficiaries, and he complied with that policy provision even though his form had a few minor mistakes. He forgot to initial a correction he made to his son's birthday, and he gave the incorrect name for the trusts, calling them "testamentary trusts" instead of "trusts under will." These errors are incredibly minor and do not serve to negate his intent.

Additionally, like the decedent in *Kibling*, whose change was effective where he was not made aware that he needed to fill out another form because the agent never properly contacted him, the Decedent's change is effective where he was not made aware that he needed to make some minor changes to the form because Transamerica failed to contact him properly. Even assuming that the Decedent saw the letter and ignored it, the Decedent still did substantially all

---

[49] Transamerica Policy Extract, Doc. 23-9.

that lay within his power to effect the beneficiary change. He filled out the form, gave Transamerica an e-mail address, and checked a box on the form which indicated, in bold and underlined writing, that he would not be sent any paper forms requesting additional information. The undisputed evidence shows that no e-mail was ever sent to the Decedent. The undisputed evidence shows that Decedent was unaware that he needed to submit corrections. Transamerica was responsible for this because they did not contact him via the proper channel. As a matter of law, the Decedent did all that was within his power to make the change.

In support of her Opposition, Karen Leclere presents an affidavit in which she avers that she paid for the Decedent's funeral, and some other things for their minor son including his school tuition. She argues that it is possible that the Decedent actually did not want to remove her as beneficiary, and that is why he did not follow through with the change. This affidavit does not create a genuine dispute of material fact for trial. Leclere's attestation, at most, amounts to some metaphysical doubt about the Decedent's intent, which is insufficient to defeat summary judgment. There is no dispute that the Decedent intended to remove Ms. Leclere as a beneficiary. Not only did Ms. Leclere already admit that the Decedent sent the December 2014 beneficiary designation form (which clearly shows his intent),[50] his intent to remove her and add Ms. Glover is corroborated by the fact that he was divorced from Ms. Leclere for over a decade and had already tried to remove Ms. Leclere as a beneficiary in 2010.

Accordingly, Lisa Glover's Motion for Summary Judgment (Doc. 23) is **GRANTED**, and the proceeds of the policy shall be distributed according to the beneficiary change form signed by David Leclere on December 1, 2014 (Doc. 23-7).

---

[50] Answer ¶ 9, Doc. 10.

## IV. MOTION FOR ATTORNEY'S FEES AND COSTS

Transamerica brings a Motion for Attorney's Fees and Costs. This Motion is unopposed. A district court has the authority to award reasonable attorney's fees and costs in interpleader actions.[51] Fees are available when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants.[52] The Court has reviewed the Motion and the attached Time and Expense details. The Court finds that the requested fees and costs are reasonable. Accordingly, Transamerica's Motion for Attorney's Fees and Costs (Doc. 21) is **GRANTED**, and Transamerica is awarded $13,912.42 to be deducted from the policy proceeds previously deposited by Transamerica into the Registry of Court.

## V. CONCLUSION

For the reasons stated herein, Glover's Motion for Summary Judgment (Doc. 23) is **GRANTED** and Transamerica's Motion for Attorney's Fees and Costs is **GRANTED** (Doc. 21). It is further **ORDERED** that by May 29, 2017, Transamerica must file a proposed order for disbursement of registry funds, pursuant to Local Rule 67(c).

Signed in Baton Rouge, Louisiana, on May 25, 2017.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[51] *Rhoades v. Casey*, 196 F.3d 592, 603 (5th Cir. 1999).
[52] *Id.*